**IN THE UNITED STATES DISTRICT COURT FOR THE**

**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **HUSSAM ABO-TOHA, a/k/a Hussam Mohamed Abotoha,** | ) | |
| **Petitioner,** | ) | |
| **v.** | ) | **Case No. CIV-26-2433-J** |
| **FRED FIGUEROA, et al.,** | ) | |
| **Respondents.** | ) | |

**REPORT AND RECOMMENDATION**

Petitioner Hussam Abo-Toha, a/k/a Hussam Mohamed Abotoha, a citizen of Palestine proceeding with counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 ("Petition") challenging his detention by the U.S. Immigration and Customs Enforcement ("ICE").[1] (Doc. 1).[2] United States District Judge Bernard M. Jones, II, referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). (Doc. 3). In accordance with the expedited briefing schedule, (Doc. 8), Respondents timely filed a Response to the Petition. (Doc. 10). Petitioner timely filed a reply. (Doc. 11). For the reasons set forth below, the undersigned

---

[1] Petitioner is housed at Diamondback Correctional Facility in Watonga, Oklahoma. (Doc. 1, at 6).

[2] Citations to the parties' filings and attached exhibits will refer to this Court's CM/ECF pagination.

recommends that Petitioner be **GRANTED** habeas relief and **released from custody immediately.**

## I. Factual Background and Procedural History

Petitioner is a citizen of Palestine who was admitted to the United States as a non-immigrant student on or about January 12, 2003. (Doc. 1, at 7). On January 16, 2007, an immigration judge granted Petitioner voluntary departure "under safeguards," meaning he remained in ICE custody, and ordered Petitioner to depart by April 16, 2007, or a removal order to Palestine would become immediately effective. (Doc. 10, at 1; *id.* at Ex. 2). Petitioner did not depart on time. (Doc. 10, at 2). On February 12, 2008, Petitioner was released under an Order of Supervision ("OOS"). (Doc. 1, at Ex. 1, at 2). The OOS states, "[b]ecause the Service has not effected your deportation or removal during the period prescribed by law, it is ordered that you be placed under supervision and permitted to be at large under the following conditions." (*Id.*) Those conditions included reporting requirements, 48-hour notice before a change of residence or employment, and notice before traveling outside Texas for more than 48 hours. (*Id.*) Petitioner asserts, and Respondents do not deny, that he complied with all conditions of the OOS for 18 years. (Doc. 1, at 6-7). Petitioner last reported to ICE on July 24, 2026, and his next reporting date was set for October 26, 2026. (*Id.*) As of his arrest by ICE on September 3, 2026, Petitioner had no criminal history. (Doc. 10, at Ex. 1, at 4).

Petitioner's United States citizen wife filed a Form I-130, Petition for Alien Relative, on behalf of Petitioner, (Doc. 1, at 8), which was approved by the United States Citizenship and Immigration Services on April 8, 2021. (Doc. 10, at Ex. 1, at 4). Petitioner

also has an approved Form I-765, Application for Employment Authorization, that is valid from May 19, 2026, to May 17, 2027. (*Id.*) In 2026, Petitioner and his wife began preparing to move their family to Worchester, Massachusetts, but had not completed their relocation from Texas. (Doc. 1, at 9). In the process of relocating, Petitioner scheduled a flight from Texas to Massachusetts for September 3, 2026. (*Id.*)

The Transportation Security Administration ("TSA") took note of the scheduled flight and alerted ICE. (Doc. 10, at Ex. 1, at 2). On September 3, 2026, ICE conducted a targeted enforcement action at the Dallas/Fort Worth International Airport to find and arrest Petitioner. (*Id.*) ICE identified Petitioner from a photograph, served him an ICE arrest warrant, arrested him because he had a final order of removal, and took him into custody. (*Id.*) The warrant states that Petitioner's arrest is supported by probable cause to believe he is removable based on "statements made voluntarily by the subject to an immigration officer and/or other reliable evidence that affirmatively indicate the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law." (*Id.* at Ex. 3).

Petitioner filed the instant Petition on September 9, 2026. (Doc. 1). Petitioner was not served a Notice of Revocation of Release or offered an informal interview until September 29, 2026. (Doc. 10, at Ex. 4). The Notice of Revocation of Release states:

> Your release has been revoked pursuant to 8 C.F.R. § 241.4(l). for the following reason(s):
>
> . . .
>
> It is appropriate to enforce the removal order entered against you as ICE has the ability and means to effectuate your removal.

> . . .
>
> ICE is seeking a travel document to effect your expeditious removal to Palestinian Territories.

(*Id.* at 2). Respondents do not allege that Petitioner violated any condition of release.

## II. Petitioner's Claims and Respondents' Responses

Petitioner raises two grounds for relief:

> (1) Violation of 8 C.F.R. § 241.13(i) because ICE failed to make "an individualized determination that removal had become significantly likely in the reasonably foreseeable future" and failed to provide "notice of the reasons [for revocation] and a prompt informal interview." (Doc. 1, at 17). Alternatively, ICE violated § 241.4(l) because ICE failed "to notify Petitioner of the reasons for revocation and provide a prompt initial informal interview." (*Id.*)
>
> (2) Violation of due process because "Respondents deprived Petitioner of physical liberty without providing the process required by those regulations and without a lawful contemporaneous determination sufficient to justify revocation under the governing standard."[3] (*Id.* at 18).

Petitioner argues that (1) "his release was governed by § 241.13" because the OOS "states that Petitioner was released because immigration authorities had not effected his deportation or removal during the period prescribed by law," (*id.* at 13); and (2) even if "Petitioner's release was governed by § 241.4," that section still has "mandatory notice and prompt-interview requirements," (*id.* at 14).

As relief, Petitioner requests immediate release subject to the conditions of the OOS and a prompt status report certifying compliance. (*Id.* at 18-19). Petitioner also asks the

[3] Petitioner explicitly declines to raise a claim under *Zadvydas v. Davis*. (Doc. 11, at 11).

Court to "[o]rder Respondents not to re-detain Petitioner based on the same revocation absent compliance with the applicable statutes, regulations, and the Due Process Clause." (*Id.* at 19).

In opposition, Respondents argue that (1) § 241.4(l)(2) allows revocation of release without notice or an opportunity to be heard, (Doc. 10, at 8-9); (2) "Respondents did provide Petitioner with written notice of the reasons for his revocation of release" and "with an informal interview and an opportunity to respond," (*id.* at 9); (3) the language of the OOS does not support a release under § 241.13, (*id.* at 9-10); (4) "even if Petitioner's case is governed by § 241.13," the written notice given to Petitioner satisfies those requirements, (*id.* at 9-12); and (5) Petitioner was afforded an informal interview within 30 days, which satisfies the "promptly" requirement, (*id.* at 12-13).[4]

Petitioner replied, arguing that (1) even if Petitioner's release had been revoked under § 241.4(l)(2), "Respondents were required to provide Petitioner notice of the asserted basis for revocation and a prompt informal interview," (Doc. 11, at 5); (2) the revocation notice and informal interview provided 26 days after re-detention each fail comport with the regulations, (*id.* at 7-9); (3) the revocation notice reinforces that Respondents failed to show changed circumstances as required by § 241.13(i)(2), (*id.* at 10-11); and (4) Respondents' belated notice and interview do not cure the unlawful revocation, (*id.* at 14-15).

[4] The undersigned does not address Respondents' *Zadvydas* arguments because no such claim was raised. (Doc. 10, at 3).

## III. Standard of Review

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear . . . challenges to the lawfulness of immigration-related detention." *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) ("Challenges to immigration detention are properly brought directly through habeas.").

## IV. The Revocation of Petitioner's Release Is Governed by 8 C.F.R. § 241.13.

### A. Legal Framework for the Detention or Release of Aliens Subject to a Final Order of Removal

When a non-citizen has been ordered removed from the country, 8 U.S.C. § 1231(a) provides a 90-day period for the government to accomplish removal, during which detention is mandatory. This is known as the "removal period," and begins at the latest of (1) "[t]he date the order of removal becomes administratively final," (2) "the date of the court's final order" when a removal order is judicially reviewed and a stay of removal is entered, or (3) "the date the alien is released from detention or confinement" if the alien is detained according to a non-immigration process (e.g., imprisonment for a crime). *Id.*; *see Zadvydas*, 533 U.S. at 682 ("When an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the alien's removal during a subsequent 90–day statutory 'removal period,' during which time the alien normally is held in custody."). "If an immigration judge issues an

alternate order of removal in connection with a grant of voluntary departure," the removal order becomes administratively final "upon overstay of the voluntary departure period." 8 C.F.R. § 1241.1(f). Thus, Petitioner's pre-removal-order period ended on April 16, 2007, when he failed to depart on time and his removal order became immediately effective. Petitioner did not appeal. *See* EOIR Automated Case Information, https://acis.eoir.justice.gov/en/caseInformation (last visited Nov. 9, 2026).

"If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall [ordinarily] be subject to supervision." 8 U.S.C. § 1231(a)(3). However, the Government retains discretionary authority to detain some aliens "beyond the removal period." § 1231(a)(6); *see Zadvydas*, 533 U.S. at 682 ("A special statute authorizes further detention if the Government fails to remove the alien during those 90 days.") (citing § 1231(a)(6)). Section 1231(a)(6) does not specify how long relevant aliens may be detained beyond the removal period. However, the Supreme Court in *Zadvydas v. Davis* held that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem" because it would directly implicate the Fifth Amendment's Due Process Clause. *Id.* at 690. The Court consequently held that § 1231(a)(6), "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." *Id.* at 689. The Court further specified that detention is presumptively reasonable for only six months. *Id.* at 701. *See also Morales-Fernandez v. INS*, 418 F.3d 1116, 1123 (10th Cir. 2005) (reiterating "the reasonable period of post-removal detention is presumptively six months"). "After this 6–month period, once the

alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas,* 533 U.S. at 701.

Following the Supreme Court's holding, the due process concepts set forth in *Zadvydas* were codified into the immigration regulations governing the detention review process with amendments to 8 C.F.R. § 241.4 and the addition of 8 C.F.R. § 241.13.[5] Under 8 C.F.R. § 241.13, ICE is required to release a non-citizen ordered removed from the United States under an OOS if there is no significant likelihood that the non-citizen will be removed in the reasonably foreseeable future. § 241.13(g)–(h); *see also Zadvydas*, 533 U.S. at 699-700 ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by law."). Alternatively, ICE may release a non-citizen under 8 C.F.R. § 241.4 if certain requirements are met after weighing several factors. § 241.4(d)–(f).

Accordingly, Petitioner is presently subject to 8 U.S.C. § 1231, and either 8 C.F.R. § 241.4 or §241.13 is applicable.

---

[5] *See* Continued Detention of Aliens Subject to Final Orders of Removal, 66 Fed. Reg. 56967-01, 56968, 2001 WL 1408247(F.R.) (Nov. 14, 2001) (to be codified at 8 C.F.R. Parts 3 and 241) ("In light of the Supreme Court's decision in *Zadvydas*, this rule revises the Department's regulations by adding a new 8 CFR 241.13, governing certain aspects of the custody determination of a detained alien after the expiration of the removal period. Specifically, the rule provides a process for the Service to make a determination as to whether there is a significant likelihood that the alien will be removed in the reasonably foreseeable future. Except as provided in this new § 241.13, the existing detention standards in § 241.4 will continue to govern the detention or release of aliens who are subject to a final orders of removal. Thus, aliens who are determined not to be a danger to the community or a flight risk may be released under § 241.4 regardless of whether there is a significant likelihood of removal.").

**B. Title 8 C.F.R. Sections 241.4 and 241.13**

"Once ICE releases a non-citizen on an Order of Supervision, ICE's ability to re-detain that non-citizen is constrained by its own regulations." *Roble v. Bondi*, 803 F. Supp. 3d 766, 771 (D. Minn. 2025). "If the determination has been made under § 241.13 that the noncitizen is unlikely to be removed from the country in the reasonably foreseeable future, then the specific provisions of this subsection will govern that noncitizen's release. Thus, § 241.4 is inapplicable to a noncitizen who has been granted release under § 241.13." *Abedi v. Carter*, No. 25-3179, --- F.4th ----, 2026 WL 3149141, at *15 (10th Cir. Oct. 21, 2026). "Subsection 241.13 accordingly sets forth its own procedures for revoking a release under this subsection, which are distinct from the procedures of release under § 241.4." *Id.* The following provisions govern revocation of release under § 241.4:

> (1) Violation of conditions of release. Any alien described in paragraph (a) or (b)(1) of this section who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody. Any such alien who violates the conditions of an order of supervision is subject to the penalties described in section 243(b) of the Act. Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.
>
> (2) Determination by the Service. The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section. A district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner. Release may be revoked in the exercise of discretion when, in the opinion of the revoking official:
>
> (i) The purposes of release have been served;

> (ii) The alien violates any condition of release;
>
> (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or
>
> (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.
>
> (3) Timing of review when release is revoked. If the alien is not released from custody following the informal interview provided for in paragraph (l)(1) of this section, the HQPDU Director shall schedule the review process in the case of an alien whose previous release or parole from immigration custody pursuant to a decision of either the district director, Director of the Detention and Removal Field Office, or Executive Associate Commissioner under the procedures in this section has been or is subject to being revoked. The normal review process will commence with notification to the alien of a records review and scheduling of an interview, which will ordinarily be expected to occur within approximately three months after release is revoked. That custody review will include a final evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release. Thereafter, custody reviews will be conducted annually under the provisions of paragraphs (i), (j), and (k) of this section.

8 C.F.R. § 241.4(l).

In contrast, "when a noncitizen is released from detention following a determination that the noncitizen is not significantly likely to be removed within the reasonably foreseeable future, the provisions of § 241.13(i) apply instead." *Abedi*, No. 25-3179, --- F.4th ----, 2026 WL 3149141, at *16. Those provisions read as follows:

> (1) Violation of conditions of release. Any alien who has been released under an order of supervision under this section who violates any of the conditions of release may be returned to custody and is subject to the penalties described in section 243(b) of the Act. In suitable cases, the HQPDU shall refer the case to the appropriate U.S. Attorney for criminal prosecution. The alien may be continued in detention for an additional six months in order to effect the alien's removal, if possible, and to effect the conditions under which the alien had been released.

> (2) Revocation for removal. The Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future. Thereafter, if the alien is not released from custody following the informal interview provided for in paragraph (h)(3) of this section, the provisions of § 241.4 shall govern the alien's continued detention pending removal.
>
> (3) Revocation procedures. Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

8 C.F.R. § 241.13(i). Section 241.13(i) allows ICE to revisit its earlier finding that there was no significant likelihood of removal in the reasonably foreseeable future, and it "specifically requires the government to notify a noncitizen in these circumstances 'of the reasons for revocation of his or her release' and to 'promptly' provide the noncitizen with 'an initial informal interview.'" *Abedi*, No. 25-3179, --- F.4th ----, 2026 WL 3149141, at *17 (quoting 8 C.F.R. § 241.13(i)).

**C. Petitioner's Release and Re-detention Are Controlled by § 241.13.**

Although the parties each alternatively argue pursuant to both sets of regulations, Petitioner contends that 8 C.F.R. § 241.13(i) applies, (Doc. 1, at 13), and Respondents suggest that 8 C.F.R. § 241.4(l) applies, (Doc. 10, at 9-10). The undersigned finds that the revocation of Petitioner's release is governed by § 241.13(i).

The OOS states, "[b]ecause the Service has not effected your deportation or removal during the period prescribed by law, it is ordered that you be placed under supervision and permitted to be at large under the following conditions." (Doc. 1 at Ex. 1, at 2). "[C]ourts have concluded that this exact language signals the individual was released because the government made a determination that there was no significant likelihood of removal in the reasonably foreseeable future." *Bui v. Bondi*, Case No. CIV-26-91-J, 2026 WL 788947, at *3 (W.D. Okla. Mar. 20, 2026) (citing *Lee v. Oddo*, Civil Action No. 25-452J, 2026 WL 523154, *3 n.5 (W.D. Pa. Feb. 25, 2026); *Hernandez-Castro v. Lyons*, Case No. 1:25-CV-01574 SLT SAB, 2025 WL 3771344, at *6 (E.D. Cal. Dec. 31, 2025)); *see also Khaddaj v. Grant*, Case No. CIV-26-273-SLP, 2026 WL 1432690, at *1 (W.D. Okla. May 21, 2026). Additionally, the record does not reveal any formal custody review or findings on the § 241.4 factors. "Thus, his release could only have been legally authorized under § 241.13," and his "release could be revoked only under the process established in § 241.13(i)." *Abedi*, No. 25-3179, --- F.4th ----, 2026 WL 3149141, at *17.

## V. Petitioner Is Entitled to Habeas Relief Because Respondents Failed to Follow Their Own Regulations in Revoking his OOS.

### A. Respondents Failed to Comply with the Notice and Interview Requirements in § 241.13(i)(3).

Petitioner alleges Respondents failed to comply with ICE's applicable regulations before re-detaining him after his prior release on an OOS. (Doc. 1, at 16-18). Under § 241.13(i), an OOS may be revoked in two circumstances: (1) where the non-citizen "violates any of the conditions of release," § 241.13(i)(1); or (2) where, based on "changed circumstances," ICE determines that there is a significant likelihood of removal in the

reasonably foreseeable future, § 241.13(i)(2). *See Tran v. Blanche*, No. CIV-25-1357-G, 2026 WL 1181700, at *2 (W.D. Okla. Apr. 30, 2026). Subsection (i)(3) provides that, "[u]pon revocation," the non-citizen "will be notified of the reasons for revocation" and afforded an informal interview. § 241.13(i)(3). By its terms, this requirement applies to any revocation under § 241.13(i), regardless of whether the revocation is based on an alleged violation of release conditions or on changed circumstances. *Tran*, 2026 WL 1181700, at *2.

The undersigned concludes that when ICE re-detained Petitioner, they failed to give him proper notice, or a prompt informal interview, as required by § 241.13(i)(3). Petitioner was not provided written notice of the revocation or afforded an informal interview when he was taken into ICE custody. He was only given notice of the revocation and afforded an informal interview on September 29, 2026, which was 26 days after his arrest. (Doc. 10, at Ex. 4). Additionally, the Notice of Revocation is deficient because it only supplies a reason for revocation under 8 C.F.R. § 241.4(l) – it does not state a reason for revocation under 8 C.F.R. § 241.13(i). (*Id.* at 2). The warrant that was issued for Petitioner also does not identify the basis for the revocation of Petitioner's OOS. (*Id.* at Ex. 3). Therefore, Petitioner was not notified of the reasons for the revocation "upon revocation."

Respondents argue that offering an informal interview within 30 days of arrest satisfies the requirement to "promptly" conduct an initial informal interview. (Doc. 10, at 12-13). But the Tenth Circuit's recent decision in *Abedi v. Carter* forecloses Respondents' 30-day test. The Tenth Circuit explained in *Abedi* that

> immigration officials cannot permissibly revoke a release granted under § 241.13 unless they have reason to believe either that the noncitizen violated the conditions of his release or "that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." § 241.13(i). Thus, in both cases the government should be prepared to conduct the procedural process to allow the detainee to contest his detention "without delay" and "very quickly or immediately," consistently with the generally understood meaning of the term "promptly." *See Promptly*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/promptly (last accessed Aug. 7, 2026); *Promptly*, Black's Law Dictionary (12th ed. 2024).

*Abedi*, No. 25-3179, --- F.4th ----, 2026 WL 3149141, at *20. The Tenth Circuit did not establish a number of hours or days within which an informal interview must be offered. *Id.* at *21. But the Tenth Circuit held that, assuming four weeks had passed without an interview, the court was "confident that the time that expired here easily establishes that the Government did not promptly conduct Mr. Abedi's interview. Thus, the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance justifying the delay." *Id.* (quotations omitted).

Respondents detained Petitioner for 26 days before they offered an interview. This cannot be considered "without delay" or "very quickly or immediately" when Respondents were required to have already established the basis for the re-detention. The undersigned is "confident that the time that expired here easily establishes that the Government did not promptly conduct [Petitioner's] interview." *Id.* Here, like in *Abedi*, "the Government has made no attempt to justify the lengthy delay. It provides no explanation as to why it could not have interviewed [Petitioner] within the [26 days] that elapsed." *Id.* Accordingly, the undersigned finds that Respondents failed to comply with their own notice and interview requirements for revocation of the OOS.

**B. Respondents Failed to Establish Changed Circumstances as Required by § 241.13(i)(2).**

Not only did Respondents fail to provide Petitioner adequate notice and a prompt interview under § 241.13(i)(3), the undersigned finds Respondents have not met their burden to show that prior to revoking Petitioner's OOS they determined there were "changed circumstances" such that there is a significant likelihood that Petitioner may be removed in the reasonably foreseeable future. 8 C.F.R. § 241.13(i)(2). "[T]he burden [is] on Respondents to establish a significant likelihood of removal in the reasonably foreseeable future in the context of re-detention under § 241.13(i)(2)." *Pham v. Bondi*, No. CIV-25-1157-SLP, 2025 WL 3243870, at *2 (W.D. Okla. Nov. 20, 2025); *see also Kong v. United States*, 62 F.4th 608, 619-20 (1st Cir. 2023) (finding it was burden of ICE to demonstrate substantial likelihood of removal in the reasonably foreseeable future existed at the time of re-detention); *Roble*, 803 F. Supp. 3d at 772-73; *Escalante v. Noem*, No. 25-cv-182 (MJT), 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025); *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 150-51 (D. Mass. 2025).

In determining whether removal is significantly likely in the reasonably foreseeable future, the regulations specify that ICE should consider several factors including the non-citizen's efforts to comply with the removal order; the history of ICE's efforts to remove individuals to the destination country or to third countries; the ongoing nature of ICE's efforts to remove the particular non-citizen and his assistance with those efforts; the reasonably foreseeable results of those efforts; and the views of the Department of State regarding the prospects for removal to the countries in question. 8 C.F.R. § 241.13(f).

Respondents do not claim that ICE made any effort to secure travel documents prior to Petitioner's re-detention – they only show that, as of September 11, 2026, "ICE is seeking a travel document." (Doc. 10, at Ex. 4, at 2-3). When travel documents are requested after revocation of release, courts have granted the petition for writ of habeas corpus and ordered petitioner's immediate release, even if travel documents were subsequently secured. "The question . . . is not whether petitioner's deportation is now likely in the reasonably foreseeable future but whether such likelihood existed at the time his [OOS] was revoked." *Munagi v. McDonald*, 813 F. Supp. 3d 225, 229 (D. Mass. 2025) (granting petitioner's release, despite the fact that the government had obtained travel documents for petitioner's return to Kenya, because the travel documents were not requested until *after* petitioner's release had been revoked). "Section § 241.13(i)(2) requires a pre-arrest, individualized determination 'on account of changed circumstances' that removal is reasonably foreseeable. A decision to revoke that lacks a supporting factual basis, perhaps in hopes that such a basis will be identified post-hoc, violates the regulatory scheme." *Pham v. Warden*, No. 1:25-CV-1873 DC AC, 2026 WL 673404, at *10 (E.D. Cal. Mar. 10, 2026), *report and recommendation adopted*, 2026 WL 849861 (E.D. Cal. Mar. 27, 2026). *See also Duong v. Charles*, Case No. 1:25-cv-01375-SKO, 2025 WL 3187313, at *3, *5-6 (E.D. Cal. Nov. 14, 2025) (granting petitioner's writ and ordering his immediate release, despite the fact that the government had obtained travel documents for petitioner's return to Vietnam, because the travel documents were not requested until almost one month *after* petitioner's release had been revoked); *Sarail A. v. Bondi*, 803 F. Supp. 3d 775, 788-89 (D. Minn. 2025) (granting writ of habeas corpus and releasing

petitioner after concluding that respondents violated § 241.13(i)(2) because, among other things, a request for travel documents several weeks after petitioner's release was revoked "could not have constituted the supposedly changed circumstances underlying the Notice").

Moreover, merely requesting travel documents is also insufficient to establish that there is a significant likelihood that Petitioner may be removed in the reasonably foreseeable future. *See Sun v. Noem*, 2025 WL 2800037, at *2-3 (S.D. Cal. Sep. 30, 2025) ("Respondents say they are 'putting together a travel document [TD] request to send to [the] Cambodian embassy,' and that '[o]nce ICE receives the TD, it will begin efforts to secure a flight itinerary for Petitioner.' The Court finds these kind of vague assertions—akin to promising the check is in the mail—insufficient to meet ICE's own requirement to show 'changed circumstances' or 'a significant likelihood that the alien may be removed in the reasonably foreseeable future.'") (record citations omitted); *Hoac v. Becerra*, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("The fact that Respondents intend to complete a travel document request for Petitioner does not make it significantly likely he will be removed in the foreseeable future."). When the revocation notice tells Petitioner only that Respondents are seeking a travel document, it does nothing to identify the reason removal is now significantly likely in the reasonably foreseeable future. Without identifying that reason, the revocation fails to provide sufficient notice for the non-citizen to challenge that finding in the informal interview, which would render futile the procedures under 8 C.F.R. § 241.13(i)(3).

The undersigned also notes that the revocation notice did not check the box that would allege that "[c]ircumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future." (Doc. 10, at Ex. 4, at 2). Additionally, Petitioner has since confirmed that a stay of removal is currently in effect, which contradicts the assertion in the revocation notice that ICE has the ability and means to effectuate his removal. (Doc. 11, at 6-7).

In sum, the record before the Court establishes that ICE failed to make an individualized determination regarding the significant likelihood of Petitioner's removal based on changed circumstances prior to Petitioner's re-detention as required by § 241.13(i)(2).

**C. ICE's Failure to Abide by its Regulations Warrants Habeas Relief in the Form of Immediate Release.**

"'[W]hen an agency promulgates a regulation protecting fundamental statutory or constitutional rights of parties appearing before it, the agency must comply with that regulation.' . . . [I]n such cases, 'failure to comply will merit invalidation of the challenged agency action without regard to whether the alleged violation has substantially prejudiced the complaining party.'" *Abedi*, No. 25-3179, --- F.4th ----, 2026 WL 3149141, at *23 (quoting *Leslie v. Att'y Gen. of U.S.*, 611 F.3d 171, 180 (3d Cir. 2010)). Applying this test, the Tenth Circuit held in *Abedi* that a failure to promptly provide an informal interview as required by § 241.13 amounted to a due process violation that entitled the petitioner to declaratory and habeas relief. *Id.* at *14, 21, 24. A majority of district courts have found that Respondents' failure to comply with § 241.13(i)(2) or § 241.13(i)(3) "amounts to a

due process violation, entitling the petitioner to habeas relief" in the form of immediate release from custody. *Pham v. Bondi*, No. CIV-25-1157-SLP, 2025 WL 3243870, at *1 (collecting cases); *Li v. Bondi*, No. CIV-25-1480-J, 2026 WL 475133, at *3 (W.D. Okla. Feb. 19, 2026); *Ye v. Bondi,* No. CIV-25-1230-D, 2025 WL 3485420, at *2 (W.D. Okla. Dec. 4, 2025); *Hamidi v. Bondi*, No. CIV-25-1205-G, 2025 WL 3452454, at *4 (W.D. Okla. Dec. 1, 2025). The undersigned recommends that the Court come to the same conclusion in this case.

As this Court has stated,

> The procedures required by 241.13(i) are more than a mere formality; they codify *Zadyvas* principles into the immigration regulations governing detention review process.
>
> By mandating minimum procedures, the regulation ensures the individual is afforded the basic due process protections guaranteed by the Fifth Amendment. A wholesale failure to provide the required notice and the mandated interview—thereby depriving the individual of any meaningful opportunity to contest the revocation of release—implicates those constitutional protections directly. "'[ICE], like any agency, has the duty to follow its own federal regulations . . . . As here, 'where an immigration regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute . . . and [ICE] fails to adhere to it, the challenged [action] is invalid.'" *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 152 (D. Mass. 2025) (citation omitted).

*Li*, No. CIV-25-1480-J, 2026 WL 475133, at *3 (citation modified); *see also Hamidi*, No. CIV-25-1205-G, 2025 WL 3452454, at *3 ("ICE, like any agency, has the duty to follow its own federal regulations. To be sure, not every procedural misstep raises a constitutional issue. However, where an immigration regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute, like the opportunity to be heard, and ICE fails to adhere to it, the challenged action is invalid.") (quoting *Rombot v. Souza*,

296 F. Supp. 3d 383, 388 (D. Mass. 2017)). The *Abedi* court has clarified that it is not only a total failure to provide notice and an interview that warrants relief, but a failure to do so promptly.

Although a violation of any regulation may not warrant habeas relief, a violation of § 241.13(i) specifically should result in a finding that Petitioner is "in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2241(c)(3). Accordingly, the Court should find that Petitioner is entitled to immediate release from custody.[6]

## VI. The Court Should Order Respondents to Follow All Applicable Laws and Regulations Before Any Future Re-Detention of Petitioner.

The undersigned recommends that the Court grant Petitioner's request for an order restraining Respondents from re-detaining him unless certain conditions are met. (Doc. 1, at 21). In *Abedi*, the Tenth Circuit reached the merits of the petitioner's habeas petition, despite his release from custody, because the Government's practice of re-detaining non-citizens released through habeas made such practices "capable of repetition yet evading review." No. 25-3179, --- F.4th ----, 2026 WL 3149141, at *3-9. The Tenth Circuit reached the merits partly because "the district court's order granting [the petitioner's] release did not prohibit his re-detention" in the future under similar circumstances. *Id.* at *9. As the Tenth Circuit noted, "the Government's demonstrated pattern of re-detaining

[6] Even if 8 C.F.R. § 241.4 governed the revocation of Petitioner's release, the undersigned would still find that the insufficient notice and untimely informal interview amount to due process violations that support Petitioner's immediate release. *See Nguyen v. Dep't Homeland Sec.*, Case No. CIV-26-87-R, 2026 WL 1506428, at *5 (W.D. Okla. May 29, 2026) (collecting cases) ("[T]hough [the petitioner's] OOS was . . . revoked pursuant to § 241.4(l)(2), he was entitled to notice of the reasons for that revocation and a prompt informal interview to allow him an opportunity to challenge it.").

other similarly situated noncitizens who have been granted habeas relief" creates a real and substantial threat of experiencing the same injury in the future. *Id.* (collecting cases). Accordingly, the undersigned finds that Petitioner's request that the Court "[o]rder Respondents not to re-detain Petitioner based on the same revocation absent compliance with the applicable statutes, regulations, and the Due Process Clause" is not speculative. (Doc. 1, at 19). The undersigned recommends that the Court grant the request to protect Petitioner from further violations of his rights.

## VII. Recommended Ruling and Notice of Right to Object

For the reasons discussed above, the undersigned recommends that the Court find Petitioner's release was revoked in violation of both § 241.13(i)(2) and § 241.13(i)(3) and accordingly **GRANT** the Petition, (Doc. 1). The undersigned recommends that the Court order Respondents:

- **to release Petitioner from custody immediately**, subject to an appropriate OOS;
- to certify compliance by filing a status report within three business days of the Court's order; and
- to comply with all applicable laws and regulations before any future re-detention of Petitioner, including any applicable exercises of discretion, notice, and opportunity to be heard.

**The Court advises the parties of their right to object to this Report and Recommendation by November 16, 2026**, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ.

P. 72(b)(2).[7] The Court further advises the parties that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues and terminates the referral to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** this 9th day of November, 2026.

AMANDA L. MAXFIELD
UNITED STATES MAGISTRATE JUDGE

[7] Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) (noting that "[t]he Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process").